UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ANDRES ROBLEDO GONZALEZ et al.,<br><br>Petitioners,<br><br>v.<br><br>KEVIN RAYCRAFT in his official capacity as Acting Field Office Director of Enforcement and Removal Operations, Detroit Field Office, Immigration and Customs Enforcement,<br><br>Respondent.[1] | Case No. 25-13502<br>Honorable Laurie J. Michelson |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS [1]**

Petitioners Andres Robledo Gonzalez, Jose Miguel De Loera Montero, and Bryan Ariel Castro Canales, while they have no lawful immigration status, have each resided in the United States for many years. Robledo Gonzalez has lived in this country for over 31 years, arriving as a minor at age 17. (ECF No. 1, PageID.7.) His wife and children are U.S. citizens, including his daughter who is currently serving in the U.S. military. (*Id.* at PageID.9.) De Loera Montero came to the United States as a minor at age 11 and has lived here for over 21 years. (*Id.* at PageID.10.) His wife and children are U.S. citizens. (*Id.* at PageID.11.) Castro Canales has resided in the United States for over seven years and has a one-year-old child who is a U.S. citizen.

---

[1] As the Court explains, Kevin Raycraft is the proper respondent here because he is the only official with "immediate custody" of Petitioners.

(*Id.* at PageID.12.) These men have no criminal history other than minor traffic offenses. (*See generally* ECF No. 1.)

Immigration officers apprehended them at traffic stops in Illinois and Michigan. (*Id.* at PageID.8, 10, 12.) Immigration Customs and Enforcement then initiated removal proceedings pursuant to 8 U.S.C. § 1229(a) and has charged each Petitioner with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i). (*Id.*) Most significant, the Petitioners are being detained without a bond hearing, pending their removal proceedings, pursuant to 8 U.S.C. § 1225(b)(2)(A). (*See* ECF No. 1.)

These detainees have now filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) They allege they are unlawfully detained at the North Lake Processing Center in Baldwin, Michigan, in violation of the Immigration and Nationality Act and that their detention without a bond hearing violates their right to due process. (*Id.* at PageID.1–4.)

In deciding the Petition, this Court is not writing on a blank slate. Numerous other courts in this Circuit and District (and across the country) have addressed nearly identical petitions. The vast majority have concluded that the government is misinterpreting the INA in depriving like petitioners of a bond hearing pending their removal proceedings.

For the reasons below, this Court joins the chorus in finding that Petitioners' detention without a bond hearing is unlawful and orders their immediate release, or in the alternative, a bond hearing for each Petitioner within seven (7) days. Accordingly, the Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED.

I.

The Court starts with a few threshold issues. First, the standard. The Court may issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241.

Second, the only proper respondent in this case is Petitioners' immediate custodian. *See* 28 U.S.C. § 2243 (instructing that a writ of habeas corpus "shall be directed to the person having custody of the person detained"). Petitioners state that they are "in the immediate custody of Respondent Kevin Raycraft." (ECF No. 1, PageID.5.) Thus, all other Respondents will be dismissed, and the Court's analysis will proceed only as to Raycraft.[2]

Next, the Court considers whether exhaustion of administrative remedies may be excused. Exhaustion is required when Congress "specifically mandates" it, otherwise "judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). Here, there is no specific Congressional mandate. Thus,

> [w]hether to require exhaustion is . . . within the district court's "sound judicial discretion." *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013) (citation omitted). Otherwise referred to as "prudential" exhaustion, *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746 (6th Cir. 2019), a court-made exhaustion rule must comport with the statutory scheme and congressional intent. *Shearson*, 725 F.3d at 593-94. The Sixth Circuit has not decided whether courts should impose administrative exhaustion in the context of a noncitizen's habeas petition for unlawful ***mandatory*** detention. *Hernandez v. U.S. Dep't of Homeland Sec.*, No. 25-01621, 2025 WL 2444114, at *8 (N.D. Ohio Aug. 25, 2025). As a result, some courts in this circuit apply Ninth Circuit precedent, but are split on the outcome. *See Lopez-Campos v. Raycraft*,

---

[2] But if "INS were to exercise its transfer power in a clear effort to evade an alien's habeas petitions" then an "exception [to the immediate custodian rule] might be appropriate." *Roman v. Ashcroft*, 340 F.3d 314, 326 (6th Cir. 2003).

> No. 2:25-cv-12486, 2025 U.S. Dist. LEXIS 169423, 2025 WL 2496379, at *4-5 (E.D. Mich. Aug. 29, 2025); *Villalta v. Greene*, No. 4:25-cv-01594, 2025 U.S. Dist. LEXIS 169688, 2025 WL 2472886, at *2 (N.D. Ohio Aug. 5, 2025); *Hernandez*, 2025 WL 2444114, at *8-10.
>
> But even if a court would ordinarily enforce prudential exhaustion, it may still choose to waive such exhaustion. *See Lopez-Campos*, 2025 U.S. Dist. LEXIS 169423, 2025 WL 2496379, at *4. For example, when the "legal question is fit for resolution and delay means hardship," a court may choose to decide the issues itself. *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13, 120 S. Ct. 1084, 146 L. Ed. 2d 1 (2000) (citation omitted). A court may also excuse exhaustion if the "pursuit of administrative remedies would be a futile gesture." *Shearson*, 725 F.3d at 594 (citation omitted).

*Pizarro Reyes v. Raycraft*, No. 25-12546, 2025 U.S. Dist. LEXIS 175767, at *3 (E.D. Mich. Sept. 9, 2025).

Petitioners ask the Court to waive any exhaustion requirement. (ECF No. 2, PageID.61–64.) Respondent asks the Court to read an exhaustion requirement into the statute but also admits that "petitioners are unlikely to obtain the relief they seek through the administrative process based on a recent decision by the Board of Immigration Appeals in *Matter of Yajure Hurtado*, 29 I &N Dec. 216 (BIA 2025)." (ECF No. 6, PageID.101.)

The Court agrees that, based on *Yajure Hurtado*, pursuing administrative remedies would be futile for Petitioners. *See Contreras-Lomeli v. Raycraft*, No. 25-12826, 2025 U.S. Dist. LEXIS 207162, at *7 (E.D. Mich. Oct. 21, 2025) ("Waiver based on futility is appropriate when an administrative agency 'has predetermined the disputed issue' by having a 'clearly stated position' that the petitioner is not eligible for the relief sought."). And the Court also appreciates that the "'delays inherent' in the BIA's administrative process 'would result in the very harm that the bond hearing

4

was designed to prevent[:]' prolonged detention without due process." *Jiménez García v. Raybon*, No. 25-13086, 2025 U.S. Dist. LEXIS 207166, at *6 (E.D. Mich. Oct. 21, 2025).

As such, the Court will exercise its discretion to waive the exhaustion requirement.

## II.

Now the merits. Petitioners assert that, as noncitizens who have been residing in the United States for years, their detention is governed by 8 U.S.C. § 1226(a), which "allows for release on conditional parole or bond," and not 8 U.S.C. § 1225(b)(2)(A), which states "the alien shall be detained," i.e., mandates detention. (ECF No. 2, PageID.50–59.) And for the past 30 years, continue Petitioners, the government has interpreted the INA in the same way. *See Lopez-Campos v. Raycraft*, No. 25-12486, 2025 U.S. Dist. LEXIS 169423, at *13 (E.D. Mich. Aug. 29, 2025). But in July 2025, the government changed its policy and began requiring mandatory detention of every noncitizen pending removal proceedings—whether they were initially detained at the border or after they had already been in the United States for years. (*See* ECF No. 1, PageID.3). Respondent now believes this is a proper interpretation of § 1225(b)(2). (ECF No. 6, PageID.101–118.)

The Court disagrees. As Petitioners point out, Respondent's "sudden reinterpretation" of the INA has been rejected by federal courts around the country, and likewise here in the Eastern District of Michigan. (ECF No. 1, PageID.17–21 (collecting cases)); *see Lopez-Campos*, 2025 U.S. Dist. LEXIS 169423, at *7–27;

5

*Pizarro Reyes*, 2025 U.S. Dist. LEXIS 175767, at *11–23; *Diaz Sandoval v. Raycraft*, No. 25-12987, 2025 U.S. Dist. LEXIS 205418, at *13–25 (E.D. Mich. Oct. 17, 2025); *Contreras-Lomeli v. Raycraft*, No. 25-12826, 2025 U.S. Dist. LEXIS 207162, at *9–22 (E.D. Mich. Oct. 21, 2025); *Jiménez García*, 2025 U.S. Dist. LEXIS 207166, at *7–9 (collecting cases). These courts have all found that § 1226(a), not § 1225(b)(2), is the appropriate statute applicable to noncitizens who are already in the country and facing removal as opposed to those who are being apprehended upon arrival at the border. *See Diego v. Raycraft*, No. 25-13288, 2025 U.S. Dist. LEXIS 222614, at *9 (E.D. Mich. Nov. 12, 2025). For the reasons below, the Court sees no reason to deviate from these rulings.

A.

This is an issue of statutory interpretation. So the Court starts with the text of the relevant statutory provisions. *In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (explaining that the inquiry "begins with the statutory text, and ends there as well if the text is unambiguous"). In doing so, the Court must assign each word its "ordinary, contemporary, common meaning." *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022). But the "meaning—or ambiguity —of certain words or phrases may only become evident when placed in context." *Vill. Apothecary, Inc.*, 45 F.4th at 947.

Section 1225(b)(2)(A) says that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall

6

be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). On its face, therefore, this mandatory detention provision pertains to "an applicant for admission" being "examin[ed]" by an immigration officer. *Id.*; *see also Lopez-Campos*, 2025 U.S. Dist. LEXIS 169423, at *6. The statute in turn defines "an applicant for admission" as an "alien present in the United States who has not been admitted or who arrives in the United States." *Id.* § 1225(a)(1). And "admission" is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A).

Section 1226(a), on the other hand, is a discretionary detention provision ("may continue to detain . . . may release"), *id.*, that pertains to "aliens already in the country pending the outcome of removal proceedings." *Jennings, v. Rodriguez*, 583 U.S. 281, 289 (2018); *see also Lopez-Campos*, 2025 U.S. Dist. LEXIS 169423, at *8. It states that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). It further provides that the Attorney General "may continue to detain the arrested alien" but "may release the alien on . . . bond of at least $1,500." *Id.* § 1226(a).

"[T]he statutory text does not provide a definitive answer as to what it means to be present without admittance where, as here, the individual has already entered and spent decades living in the United States." *Pizarro Reyes*, 2025 U.S. Dist. LEXIS 175767, at *13 (considering the INA's applicability to identically situated persons as Petitioners). Respondent would like the Court to read bits of § 1225(b)(2)(A) in

7

isolation (ECF No. 6, PageID.105), and give "seeking admission" a broad definition to include "every single person who has not been admitted legally into the United States, including Petitioner[s]." *See Contreras-Lomeli*, 2025 U.S. Dist. LEXIS 207162, at *9. But "[t]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-land Servs., Inc.*, 566 U.S. 93, 101 (2012).

This context can include the title of the statute. *Dubin v. United States*, 599 U.S. 110, 120–21 (2023) ("This Court has long considered that the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute."). And here, the titles are quite useful. As another court in this District helpfully explained:

> The title of § 1225 is revealing: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." The use of "arriving" to describe noncitizens strongly indicates that the statute governs the entrance of noncitizens to the United States. This reading is bolstered by the fact that § 1225 clearly establishes an inspection scheme for when to let noncitizens into the country.

*Pizarro Reyes*, 2025 U.S. Dist. LEXIS 175767, at *13–14.

There are other indicia that § 1225, and its mandatory detention requirement, deals with detention of newly arrived noncitizens at the border or ports of entry (and not noncitizens living in the country for years). First, as reviewed and relied upon by numerous other courts, there is "statutory history, congressional intent, and statutory application for the last three decades." *See Diego*, 2025 U.S. Dist. LEXIS 222614, at *9–10 (collecting cases). Next, § 1225(b)(2)(B) "provides exceptions to the mandatory detention provisions of (2)(A) for noncitizens who are 'crewm[e]n' or

8

'stowaway[s]'—both of which imply arrival at a port of entry." *Contreras-Lomeli*, 2025 U.S. Dist. LEXIS 207162, at *13 (alterations in original); *see also Pizarro Reyes*, 2025 U.S. Dist. LEXIS 175767, at *14. And lastly, there is Congress' recent amendment of § 1226 via the Laken Riley Act, Pub. L. No. 119-1, § 2, 139 Stat. 3 (2025). The amendment added a new subsection that mandates detention of inadmissible noncitizen detainees who have been charged, arrested, or convicted of certain felonies. 8 U.S.C. § 1226(c)(1)(E). So if § 1225(b)(2) authorized detention of all inadmissible noncitizens, criminal record or not, then § 1226(c)(1)(E) would be superfluous. *Pizarro Reyes*, 2025 U.S. Dist. LEXIS 175767, at *15–16.

And while the Supreme Court has not yet addressed whether noncitizens residing within the United States for years are considered "applicants for admission," its past interpretation of the statute provides some guidance here. In *Jennings*, the Court stated that § 1226 sets out the "default rule" and "generally governs the process of arresting and detaining that group of aliens pending their removal." 583 U.S. at 288.

In short, all of these reasons support an interpretation of § 1226 as providing the general rule for the detention of noncitizens, while § 1225 specifically covers detention at a border or port of entry. *Pizarro Reyes*, 2025 U.S. Dist. LEXIS 175767, at *15 ("The inclusion of both provisions in the overall statute is likely no coincidence, but rather a way for Congress to capture noncitizens who fall outside of the specified categories."); *see also Contreras-Lomeli*, 2025 U.S. Dist. LEXIS 207162, at *13 ("§ 1226 is the primary statutory provision focused on the detention of noncitizens. In

9

this way, § 1225 can best be understood as a limited provision governing removal proceedings of arriving noncitizens within the statutory scheme."). Thus, as many other courts have found, § 1225(b)(2)(A) "applies to aliens undergoing inspection, which generally occurs at the United States' border, when they are seeking lawful entry into the United States." *Sanchez Alvarez v. Noem*, No. 25-1090, 2025 WL 2942648, at *5 (W.D. Mich. Oct. 17, 2025). In contrast, § 1226(a) "applies to a noncitizen who has resided in this country for [many] years and was already within the United States when apprehended and arrested." *Lopez-Campos*, 2025 U.S. Dist. LEXIS 169423, 2025 WL 2496379, at *23.

Under this interpretation, Petitioners are correct that § 1226(a) governs their detention, not § 1225(b)(2)(A). Petitioners were not apprehended upon arrival to this country at a border or port of entry. To the contrary, they have lived in the United States for many years and were apprehended during traffic stops. Nor do they have any criminal records that would exclude them from eligibility for a bond hearing under § 1226(a)'s "discretionary framework." *See Lopez-Campos*, 2025 U.S. Dist. LEXIS 169423, at *22.

So the Court will not "upend 30 years of reasoned statutory interpretation" as Respondent tries to do here. *See Jiménez García*, 2025 U.S. Dist. LEXIS 207166, at *8. It will instead rule in line with almost every other Michigan district court judge who has considered the question, that under § 1226(a), Petitioners are entitled to a discretionary bond determination hearing. And because they have been detained without receiving such a hearing, they are in custody in violation of federal law.

### III.

Given this finding of a violation of the INA, the Court need not address Petitioners' Fifth Amendment due process claim at this time. *See Jiménez García*, 2025 U.S. Dist. LEXIS 207166, at *8–9; *Pizarro Reyes*, 2025 U.S. Dist. LEXIS 175767, at *23. If Respondent does not release Petitioners or provide them with a bond determination hearing in accordance with this order, Petitioners may renew the claim.

### IV.

For these reasons, Petitioners' habeas corpus Petition is GRANTED as follows: Respondent Raycraft shall (1) provide Petitioners with a bond hearing under § 1226(a) on or before November 26, 2025, or otherwise release them; and (2) docket a status report to certify compliance with this order and that details the results of the bond hearings on or before December 1, 2025.

SO ORDERED.

Dated: November 17, 2025

s/Laurie J. Michelson<br>
LAURIE J. MICHELSON<br>
UNITED STATES DISTRICT JUDGE